IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICKY JOE RAKES,                )
                                )
    Plaintiff,                  )
                                )
v.                              )    Civil Action No. 3:20CV581–HEH
                                )
MS. GOODE, *et al.*,            )
                                )
    Defendants.                 )

<u>MEMORANDUM OPINION</u>
(Granting Motion to Dismiss as to Certain Claims)

Ricky Joe Rakes, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action alleging that, while he was incarcerated by the Virginia Department of Corrections ("VDOC") at the Halifax Correctional Unit ("HCU"), Defendants[1] provided him with constitutionally inadequate medical care for his mental health issues, violated his privacy rights, harassed him, threatened him, and/or took out "bogus" charges against him. (ECF No. 17 at 1–4.)[2] The matter is now before the Court on the Motion to Dismiss filed by the VDOC Defendants. (ECF No. 29.) Despite being provided with *Roseboro* notice,[3]

---

[1] Rakes names as defendants: Nurse Vass; Warden Goode; Major Hurt; Lieutenant Stanley ("Lt. Stanley"); and Lieutenant Gallimore ("Lt. Gallimore"). (ECF No. 17 at 1.) Rakes has apparently misspelled Lt. Gallimore and Lt. Stanley's names, and the Court will utilize the spelling of those names provided by their counsel. (*See* ECF No. 30 at 1.) The Clerk is directed to update the docket to reflect the correct spelling of Lt. Stanley's name. (*See id.* at 1 n.1.) Warden Goode, Major Hurt, Lt. Stanley, and Lt. Gallimore collectively will be referred to as the "VDOC Defendants."

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization and omits any emphasis or symbols in quotations from the parties' submissions.

[3] *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Rakes has failed to respond. For the reasons set forth below, the Motion to Dismiss (ECF No. 29) will be granted as to certain enumerated claims.[4]

## I. STANDARD FOR A MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (second alteration in original). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to

---

[4] Nurse Vass has filed a Motion for Summary Judgment. (ECF No. 32.) That motion will be addressed separately in a forthcoming memorandum opinion and order.

2

relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, although the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF PERTINENT ALLEGATIONS AND CLAIMS

Proceeding on his Particularized Complaint ("Complaint," ECF No. 17), Rakes alleges that:[5]

> During all medical appointments and mental health evaluations and doctor appointments, under Nurse Vass's order, an officer had been present. Even during physicals and medical exams, when an inmate asks to speak with the doctor or nurse privately, we are told no for staff[] safety. This is a [Level] I road camp, there are no violent offenders on this camp. There is never the same officer present. Anyone can stay in there; we have no privacy with the doctor. The doctor even spoke about my Hep[atitis] C

---

[5] The Court omits any paragraph numbers, references to secondary sources, and case authority in quotations from the Complaint, unless otherwise noted.

3

in front of an officer, who in turn, could have told anyone, even other inmates. C[orrectional] O[fficer]s are not health care workers, nor are they employed by the health care providers. They are merely correctional officers who are not supposed to be present for any medical review.

On 2-17-20, I s[aw] Dr. Fischer, a psychologist from Nottoway Correct[ional] Center. He stated that with my mental health condition, schizo-effective-disorder, I should not be on the road camp without proper medication. I agreed and he changed my mental health code to A2, so I could be immediately transferred and receive medication. That never happened. I went without meds until 8/2020, when I finally was transferred. I requested medication numerous times and was denied. I requested a transfer numerous times, and was denied, even though others with medical issues were transferred. So, from 2/17/20 till I was transferred in August, 2020, I was denied proper medicine to cope with my mental defect.

During my unwarranted stay at [HCU], I was targeted by staff, made fun of, [and] provoked, [and] they would harass me till I could not take it no more, and then issue me some charge and then find me guilty and only give me a fine.

Lt. Stanley continuously harassed me. He would tell other inmates to stay away from me cause he was out to get me (*i.e.*, Trevor Cox and Bryant Giles). He would tell officers to write me bogus charges just to get a reaction from me.

On 7-14-20, I had a disciplinary hearing. I asked to speak with investigator Lt. Gallimore, because I was afraid to be in a room with Lt. Stanley. I told him this and that I was having a mental breakdown and he didn't want to do or say anything to Lt. Stanley. To get me in trouble, Lt. Gallimore wrote me a charge for "threatening staff."

The civil rights that were violated were the 8th Amendment for cruel and unusual punishment, also the right to medical/mental health privacy, and deliberate indifference.[6]

(*Id.* at 1–3.)

Rakes demands relief upon the following grounds:

| | |
|---|---|
| Claim One | "Nurse Vass [(a)] had officers present during all appointments, no right to privacy, also [(b)] she denied me medication for my illness." (*Id.* at 3–4.)[7] |

---

[6] The Eighth Amendment states that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[7] Claims One (a)–(b) are not presently before the Court and will not be addressed herein.

| | |
|---|---|
| Claim Two | "Warden Goode [(a)] denied my right to privacy by allowing her officers to be present during all medical appointments and mental health appointments. She also [(b)] did not transfer me to a facility where I could receive medication. She also, knowing of my illness and lack of proper medication, allowed her officers [(c)] to antagonize me and [(d)] write bogus charges against me." (*Id.* at 4.) |
| Claim Three | "Major Hurt [(a)] denied my right to privacy by allowing his officers to be present during all medical appointments and mental health appointments. He also [(b)] did not help me with the officers who were targeting and harassing me." (*Id.*) |
| Claim Four | "Investigator Lt. Gallimore, knowing of my mental health condition, [(a)] refused to help me with obtaining medication, and [(b)] allowing officers to target me, [and (c)] he himself wrote charges against me." (*Id.*) |
| Claim Five | "Lt. Stanley [(a)] harassed me, made jokes about my illness to other inmates, and [(b)] denied me the same rights as other inmates." (*Id.*) |

The VDOC Defendants did not specifically address Claims Two (d), Four (c), and Five (b) in their Motion to Dismiss. Accordingly, at this juncture, the Court will not address those claims further.

## III. ANALYSIS

### A. Legal Standards

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). However, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S.

5

662, 676 (2009) (citations omitted). Instead, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Thus, in order to survive a motion to dismiss, a plaintiff must "affirmatively [allege] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

To state an Eighth Amendment claim, an inmate must allege facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167. A serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person

6

would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* states "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### B. Verbal Abuse

In Claims Two (c), Three (b), Four (b), and Five (a), Rakes alleges that the VDOC Defendants violated his Eighth Amendment rights by verbally abusing him, encouraging others to verbally abuse him, or failing to stop others from verbally abusing him.

"Mere threats or verbal abuse by prison officials without more, do not state a cognizable claim under § 1983." *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)). Even where an officer's "threat" causes a plaintiff "to fear for his life," it is not actionable in the context of § 1983. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (citations omitted). Moreover, a supervisor cannot be held liable for a subordinate's actions where the subordinate did not violate the Constitution. *Temkin v. Frederick Cnty. Com'rs*, 945 F.2d 716, 724 (4th Cir. 1991) (citations omitted). Accordingly, Claims Two (c), Three (b), Four (b), and Five (a) will be dismissed.

### C. Denial of Medical Treatment

In Claim Two (b), Rakes alleges that Warden Goode refused to transfer him to a different facility where he could receive medication, and in Claim Four (c), Rakes alleges that Lt. Gallimore refused to help him with obtaining medication. (ECF No. 17 at 4.)

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)), *overruled in part on other grounds by* Farmer, 511 U.S. at

8

837. However, "[i]f a prisoner is under the care of medical experts," then "non[-]medical prison official[s] will generally be justified in believing that the prisoner is in capable hands." *Iko*, 535 F.3d at 242 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Indeed, "[h]olding a non-medical prison official liable in a case where a prisoner was under the care of a [healthcare professional] would strain th[e] division of labor" that is necessary in a prison setting to promote "[i]nmate health and safety. *Id.* (quoting *Spruill*, 372 F.3d at 236). The Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with a course of treatment is insufficient to state a cognizable claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### 1. Warden Goode - Claim Two (b)

An inmate may establish that a prison administrator is liable under § 1983 based upon a communication, if he alleges facts that indicate "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer*, 511 U.S. at 837). Thus, Rakes must allege that Warden Goode "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Although Rakes generally avers that he "requested a transfer numerous times," and that Warden Goode "kn[ew] of [his] illness and lack of proper medication," his allegations are far too vague and conclusory to be "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Rakes does not identify how exactly he put Warden Goode on notice of his alleged constitutional deprivation. (ECF No. 17 at 1–4.) He does not allege that he spoke to her directly and told her about his situation, or that he sent her a letter or other written communication explaining in sufficient detail that an "excessive risk" existed as to his health and safety. (*Id.*) Consequently, he has failed to allege facts sufficient to form an inference that Warden Goode "subjectively recognized a substantial risk of harm" to Rakes existed, much less that she "subjectively recognized that [her] actions were inappropriate in light of that risk." *Parrish ex rel. Lee*, 372 F.3d at 303 (internal quotation marks and citation omitted). Accordingly, Rakes has failed to state a cause of action against Warden Goode and Claim Two (b) will be dismissed.

### 2. Lt. Gallimore – Claim Four (a)

Rakes alleges that on July 14, 2020, at a disciplinary hearing, he told Lt. Gallimore that he was "having a mental breakdown." (ECF No. 17 at 3.) While the term "mental breakdown" is vague and undefined, the Court will assume without deciding that it is sufficiently detailed to form an inference that Lt. Gallimore "subjectively recognized a substantial risk of harm" to Rakes. *Parrish ex rel. Lee*, 372 F.3d at 303 (citation omitted). Thus, the question becomes whether Rakes has pled sufficient facts to form an inference that Lt. Gallimore "subjectively recognized that his actions were in appropriate in light of that risk." *Id.* at 303 (internal quotation marks and citations omitted).

10

Once more, Rakes's vague Complaint undermines his claims. Rakes does not allege that he asked Lt. Gallimore to procure any specific medicine for him. (ECF No. 17 at 1–4.) Rakes does not even allege what medicine(s) he believes he should have been taking at that time. (*Id.*) Nor does Rakes allege that he asked Lt. Gallimore to take him to the medical unit or have him transferred to another prison. (*Id.*) To the contrary, Rakes does not allege that he asked Lt. Gallimore to render any particular form of assistance to him, much less establish that Lt. Gallimore had a legal duty to do so. (*Id.*)

Furthermore, it is clear that Rakes was under the care of prison medical professionals at the time he interacted with Lt. Gallimore. (*Id.* at 1–2.) Therefore, even if Rakes had specifically requested that Lt. Gallimore assist him in obtaining medicine, Lt. Gallimore, a non-medical prison officer, would nevertheless have been "justified in believing that [Rakes was] in capable hands," and justified in declining that request. *Iko*, 535 F.3d at 242 (citations omitted). Put another way, Lt. Gallimore was "entitled to rely upon [the prison] health care providers' expertise" to determine whether Rakes needed medication, and if so, what type. *Miltier*, 896 F.2d at 854–55. As such, Rakes has failed to state a claim against Lt. Gallimore upon which relief can be granted. Accordingly, Claim Four (a) will be dismissed.

**D. Privacy Concerns**

In Claims Two (a) and Three (a), Rakes alleges that Warden Goode and Major Hurt violated his privacy rights by allowing their officers to be present during his medical examinations to ensure staff safety.

11

In determining the scope of constitutional privacy rights, the United States Court of Appeals for the Fourth Circuit applies a two-part test that asks first "whether 'a reasonable expectation of privacy'" exists, and second, "whether 'a compelling governmental interest in disclosure outweighs the individual's privacy interest.'" *Payne v. Taslimi*, 998 F.3d 648, 657 (4th Cir. 2021) (quoting *Walls v. City of Petersburg*, 895, F.2d 188, 192 (4th Cir. 1990)). Once it is determined that a prisoner lacks a reasonable expectation of privacy in preventing a particular disclosure for one purpose, he or she has lost that expectation of privacy for all purposes. *Id.* at 658–59 (citing *United States v. Jeffus*, 22 F.3d 554, 559 (4th Cir. 1994)).

Furthermore, with respect to informational disclosures, the location where the disclosure was made impacts the level of privacy that an inmate can reasonably expect to be afforded. *See Payne*, 998 F.3d at 659 (holding that the disclosure of an inmate's diagnosis and treatment compliance to guards and other inmates was not actionable due in part to location where it was made). An inmate has a significantly reduced expectation of privacy, if any at all, to shield his medical information from disclosure in a prison medical unit because that is a "relevant place for [medical histories] to be shared," and because "it might be difficult to ensure others would not hear" in such a location. *Id.* It is against this backdrop that the Court must consider Rakes's privacy claims.

As an initial matter, although Rakes acknowledges that the security protocol that he complains of was in place to ensure staff safety, he seems to maintain that it was not necessary because HCU is a low security facility. (ECF No. 17 at 1.) The Court need not resolve this issue, *cf. Turner v. Safley*, 482 U.S. 78, 89 (1987) (observing that "prison

12

administrators . . ., and not the courts, to make the difficult judgments concerning intuitional operations") because, as discussed below, Rakes has failed to show that he had a reasonable expectation of privacy for an entirely different set of reasons. *See Payne*, 998 F.3d at 658–59 (citing *Jeffus*, 22 F.3d at 559).

Setting aside the issue of security, Rakes's allegations are, once again, incredibly vague. Although he alleges that an officer was present at all of his appointments, he only alleges one identifiable disclosure of his personal information. (ECF No. 17, at 1.) On some unspecified date, he alleges that an unnamed doctor made mention of his Hepatitis C diagnosis. (*Id.*) He does not allege that the unidentified officer that was present heard the doctor's comment, much less that he or she passed that information along to anyone else. (*See id.*) Rather, his complaint is merely that the officer *could have* heard it and passed it along to others. (*Id.*) Rakes then goes on to state that correctional officers "are not supposed to be present for any medical review." (*Id.*) The Court is, of course, not bound by this last statement because it is "no more than [a] conclusion, [and] [is] not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

With regard to the one identifiable disclosure of medical information that Rakes has alleged, it appears that the disclosure may have occurred in the prison's medical unit, or its equivalent, despite the fact that Rakes failed to specifically allege the site of the disclosure. To the extent that the disclosure of his Hepatitis C status was made in the prison medical unit, this fact would reduce Rakes's expectation of privacy, if not curtail it all together, because that is a location where such a disclosure would reasonably be

13

expected to be made and because it is difficult to prevent other people from hearing conversations in a prison medical unit. *See Payne*, 998 F.3d at 659.

Moreover, Hepatitis C is a communicable disease and prisoners do not have a reasonable expectation of keeping their diagnosis for a communicable disease private. *Id.* at 658–59. It does not matter whether the disclosure comes as a primary disclosure to prison officials to manage the spread of communicable disease or whether it comes in the form of secondary disclosure to a guard or other inmate in the prison's medical ward. *Id.* Once a prisoner has lost their expectation of privacy in keeping a thing private for one purpose, they have lost it for all purposes. *Id.* (citing *Jeffus*, 22 F.3d at 559).

In any event, whatever subjective "desire [Rakes] may have to keep [his Hepatitis C diagnosis] purely private is incompatible with the needs of an institution, and therefore not reasonable." *Id.* (internal quotation marks and citations omitted). Consequently, Rakes has failed to state a cause of action for the alleged deprivation of his privacy rights and the alleged disclosure of his medical information. Accordingly, Claims Two (a) and Three (a) will be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Motion to Dismiss filed by the VDOC Employees (ECF No. 29) will be granted as to Claims Two (a)–(c), Three (a)–(b), Four (a)–(b), and Five (a). Claims Two (a)–(c), Three (a)–(b), Four (a)–(b), and Five (a) will be dismissed. Major Hurt will be dismissed as a party to this action. Claims One (a)–(b) against Nurse Voss will be addressed in a separate memorandum opinion and order. Warden Goode, Lt. Gallimore, and Lt. Stanley must file an Answer to Claims Two (d),

Four (c), or Five (b), respectively, within forty-five (45) days of the date of entry hereof.

The Clerk is directed to update the docket to reflect the appropriate spelling of Lt. Stanley's name.

An appropriate Order shall accompany this Memorandum Opinion.

                                      /s/
                           Henry E. Hudson

Date: Sept 7, 2022        Senior United States District Judge
Richmond, Virginia