IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICKY JOE RAKES,           )
                           )
    Plaintiff,             )
                           )
v.                         )        Civil Action No. 3:20-cv-581–HEH
                           )
MS. GOODE, *et al.*,       )
                           )
    Defendants.            )

## MEMORANDUM OPINION
(Granting Motion for Summary Judgment)

Ricky Joe Rakes, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action alleging that, while he was incarcerated by the Virginia Department of Corrections ("VDOC") at the Halifax Correctional Unit ("HCU"), Defendants[1] provided him with constitutionally inadequate medical care for his mental health issues, violated his privacy rights, harassed him, threatened him, and/or took out "bogus" charges against him. Proceeding on his Particularized Complaint ("Complaint," ECF No. 17), Rakes raises the following claims for relief:[2]

    Claim One    "Nurse Vass [(a)] had officers present during all appointments, no right to privacy, also [(b)] she denied me medication for my illness." (*Id.* at 3–4.)

---

[1] Rakes names as defendants: Nurse Vass; Warden Goode; Major Hurt; Lieutenant Stanley ("Lt. Stanley"); and Lieutenant Gallimore ("Lt. Gallimore"). (ECF No. 17 at 1.) Rakes has misspelled Lt. Gallimore and Lt. Stanley's names, and the Court utilizes the spelling of those names provided by their counsel. (*See* ECF No. 30 at 1.) Warden Goode, Major Hurt, Lt. Stanley, and Lt. Gallimore collectively will be referred to as the "VDOC Defendants."

[2] The Court employs the pagination assigned by the CM/ECF docketing system for the citations to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization and omits emphasis and symbols in quotations from the parties' submissions.

| | |
|---|---|
| Claim Two | "Warden Goode [(a)] denied my right to privacy by allowing her officers to be present during all medical appointments and mental health appointments. She also [(b)] did not transfer me to a facility where I could receive medication. She also, knowing of my illness and lack of proper medication, allowed her officers [(c)] to antagonize me and [(d)] write bogus charges against me." (*Id.* at 4.) |
| Claim Three | "Major Hurt [(a)] denied my right to privacy by allowing his officers to be present during all medical appointments and mental health appointments. He also [(b)] did not help me with the officers who were targeting and harassing me." (*Id.*) |
| Claim Four | "Investigator Lt. Gallimore, knowing of my mental health condition, [(a)] refused to help me with obtaining medication, and [(b)] allowing officers to target me, [and (c)] he himself wrote charges against me." (*Id.*) |
| Claim Five | "Lt. Stanley [(a)] harassed me, made jokes about my illness to other inmates, and [(b)] denied me the same rights as other inmates." (*Id.*)[3] |

The matter is now before the Court on the Motion for Summary Judgment filed by Nurse Vass. (ECF No. 32.) Despite being provided with *Roseboro* notice,[4] Rakes has failed to respond. For the reasons stated below, the Motion for Summary Judgment (ECF No. 32) will be granted and Claims One (a) and (b) will be dismissed.

## I. STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

"Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[3] By Memorandum Opinion and Order entered on September 7, 2022, (ECF Nos. 36, 37), the Court dismissed Claims Two (a)–(c), Three (a)–(b), Four (a)–(b), and Five (a) against the VDOC Defendants. (*See* ECF No. 37.) Major Hurt was dismissed as a party to the action. (*Id.*) Warden Goode, Lt. Gallimore, and Lt. Stanley were ordered to file an Answer to Claims Two (d), Four (c), and Five (b), respectively. (*Id.*)

[4] *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

2

of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's

3

opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of her Motion for Summary Judgment, Nurse Vass has submitted her own affidavit ("Vass Affidavit," ECF No. 33-1), and twenty-four (24) pages of Rakes' VDOC medical records. (ECF No. 33-2.)

At this stage, the Court is tasked with assessing whether Rakes "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim[s] at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). Generally, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324.

Because Rakes failed to respond to the Motion for Summary Judgment, and because his Complaint does not constitute admissible evidence, Rakes has failed to cite to any evidence that he wishes the Court to consider in resolving the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment). Rakes' failure to present any admissible evidence to counter the Motion for Summary Judgment permits the Court to rely solely on Nurse Vass's submissions in deciding the issue of summary judgment. *See Forsyth*, 19 F.3d at 1537; *see also* Fed. R. Civ. P. 56(c)(3).

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Rakes.

## II. SUMMARY OF UNDISPUTED FACTS

Nurse Vass has "been a Registered Nurse (RN) since 1983." (Vass Aff. ¶ 1.)[5] She has worked for the VDOC for thirty-two years, and at all times relevant to this action she was the "Health Authority" at HCU. (*Id.* ¶ 3.) As the "Health Authority," Nurse Vass managed the medical department at HCU. (*Id.* ¶ 4.) The health department is staffed by two nurses, one of whom is Nurse Vass. (*Id.*) "Physicians are contracted to come to [HCU] once a week." (*Id.*) HCU "does not have an on-site psychiatrist." (*Id.* ¶ 5.) "If an inmate has mental health needs that require . . . 24-hour nursing capabilities, then the inmate will be transferred to another facility." (*Id.*)

Nurse Vass "also provide[s] direct medical care to inmates during sick calls, emergencies, and intakes." (*Id.* ¶ 7.) Inmates can "discuss their medical and mental health concerns during sick call and medical appointments," which takes place in the medical department. (*Id.* ¶ 8.) When an inmate goes to the medical department, he or she is escorted by a corrections officer. (*Id.*) The corrections officer "will remain present during the nurse or doctor visit . . . for the safety of the medical staff." (*Id.*) Nurse Vass did not create this security policy. (*Id.* ¶ 9.)

Corrections officers at HCU have been trained to "protect sensitive patient information from being disclosed." (*Id.* ¶ 10.) However, if an inmate asks to speak to Nurse Vass outside of the presence of the corrections officer, she "will offer the inmate the chance to quietly inform [her] of the issue." (*Id.* ¶ 11.)

---

[5] The Court omits references to secondary sources in citations to the summary judgment record.

Nurse Vass does not make "decisions regarding the approval or disapproval of medications." (*Id.* ¶ 6.) Only "[p]hycisians order medications." (*Id.*) Nurse Vass does not have the authority to override a physician's decision concerning medication. (*Id.* ¶ 16.) Her only involvement with prescriptions occurs if "there is a medication error or a medication delay" that needs to be addressed with the pharmacist. (*Id.* ¶ 6.)

On June 24, 2020, Rakes requested to see "psych." (*Id.* ¶ 13.) Rakes "refused to speak to the nurse during sick call about his mental health concerns because he did not want to talk about them in front of a correctional officer." (*Id.*) Rakes was subsequently evaluated by a psychologist on July 2, 2020. (*Id.*)

On July 24, 2020, Rakes had a follow-up visit with the psychologist. (*Id.* ¶ 14.) At that time, "[h]e was informed that his transfer to another facility had been approved." (*Id.*) Rakes was transferred to another prison on July 29, 2020. (*Id.* ¶ 15.)

Nurse Vass has never withheld any prescription medications from Rakes. (*Id.* ¶ 18.) Nor has she ever overrode "any medical decision or medication order made by the mental health providers at [HCU], including . . . Dr. Fischer." (*Id.* ¶ 17.)

### III. ANALYSIS

#### A. Legal Standards

Under 42 U.S.C. § 1983, a plaintiff must demonstrate that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). However, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates

under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted). Instead, the "plaintiff must [demonstrate] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Thus, in order to survive a motion for summary judgment, a plaintiff must "affirmatively [show] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

To establish an Eighth Amendment claim, an inmate must prove facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must prove that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must prove 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167. A serious medical condition is "one that has been diagnosed

7

by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted).

The subjective prong requires the plaintiff to prove facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* states "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to prove facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### B. Denial of Medication – Claim One (b)

In Claim One (b), Rakes alleges that Nurse Vass "denied [him] medication for [his] illness." (ECF No. 17, at 3–4.) However, he does not allege what medication he was supposed to be taking, when it was prescribed for him, who it was prescribed by, what it was intended to treat, or the dates on which Nurse Vass allegedly denied it to him. (*Id.* at 1–4.)

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Rakes fails to cite to any admissible evidence to demonstrate that he could satisfy this standard at trial.[6]

To the contrary, the undisputed admissible evidence before the Court establishes that Nurse Vass never withheld any prescription medication from Rakes. (Vass Aff. ¶ 18.) Nor did she ever "override any medical decision or medication order made by the mental health providers at [HCU]." (*Id.* ¶ 17.) Thus, Rakes has failed to demonstrate that Nurse Vass showed deliberate indifference to his serious medical condition by denying him medication. Accordingly, Claim One (b) will be dismissed.

---

[6] Although Rakes' allegations that he suffers from "schizo-effective-disorder" and had a "mental breakdown," (*see* ECF No. 17, at 2–3), are vague and unsupported, the Court assumes, *arguendo*, that Rakes has a "serious medical condition." *Iko*, 535 F.3d at 241 (citation omitted).

9

### C. Privacy Concerns – Claim One (a)

In Claim One (a), Rakes alleges that Nurse Vass violated his privacy rights by ordering officers to be present during his medical and mental health appointments. (ECF No. 17, at 1, 3–4.) However, the record before the Court demonstrates that Nurse Vass did not create the policy dictating that a guard must be present for all medical and mental health appointments, (*see* Vass Aff. ¶ 9), despite Rakes' unsworn and unsupported allegation to the contrary. (*See* ECF No. 17, at 1.) Rakes also failed to allege, much less demonstrate, that any sort of supervisory relationship existed between Nurse Vass and the guards that came to the medical department. *Cf. Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (noting that supervisors can be held liable "only for their personal wrongdoing or supervisory actions that violate[] constitutional norms"). Similarly, Rakes failed to allege that Nurse Vass personally participated in any disclosure of his medical information or that she was even present when a such a disclosure occurred. (ECF No. 17, at 1–4.)

Claim One (a) is lacking at the most basic level because Rakes failed to adequately allege or demonstrate through admissible evidence that Nurse Vass was personally involved in the alleged deprivation of his rights. *Wright*, 766 F.2d at 850 (citing *Vinnedge*, 550 F.2d at 928). For this reason alone, Claim One (a) must be dismissed. *Cf. United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) ("[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment").

However, even if Rakes could somehow demonstrate that Nurse Vass personally participated in the events complained of, which he has not done, Claim One (a) would nevertheless fail because Rakes has failed to establish that a constitutional deprivation occurred in this instance. Rakes alleges only one actual disclosure of his personal medical information. (ECF No. 17 at 1.) On some undetermined date, he maintains that some unnamed doctor mentioned his Hepatitis C diagnosis in the presence of an unnamed guard. (*Id.*) In dismissing similar claims against the Warden Goode and Major Hurt, the Court concluded by Memorandum Opinion and Order entered on September 7, 2022, (ECF Nos. 36, 37), that, for several reasons, Rakes did not have a reasonable expectation of privacy in preventing the disclosure of his Hepatitis C status to other inmates or guards in the medical department, (*see* ECF No. 36 at 12–14.)

For the same reasons his privacy claims against Warden Goode and Major Hurt failed, Rakes likewise failed to demonstrate that Nurse Vass deprived him of any constitutionally protected privacy rights. Accordingly, Claim One (a) will be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Motion for Summary Judgment filed by Nurse Vass (ECF No. 32) will be granted. Claims One (a) and (b) will be dismissed. Nurse Vass will be dismissed as a party to this action.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Sept. 12, 2022
Richmond, Virginia